UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHLEEN DVORAK, No. 14808-025,<br><br>  Petitioner,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS,<br><br>  Respondent. | Case No. 23-cv-2947-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Dvorak's petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 (Doc. 1) in which she brings a due process challenge claiming she did not receive First Step Act time credit for completing approved post-secondary education courses while at Federal Correctional Institution Pekin Satellite Camp in Pekin, Illinois ("FCI-Pekin") in 2022. The Federal Bureau of Prisons opposes the petition (Doc. 17). The Court finds that Dvorak's § 2241 petition lacks merit. Accordingly, Dvorak's petition is **DENIED**.

I.   Background

In October of 2021, Dvorak was sentenced for multiple crimes related to bank fraud and wire fraud in the United States District Court for the Southern District of Illinois. *Dvorak v. BOP*, Case No. 3:20-cr-30117 (S.D. Ill.). She is currently on home confinement with a projected release date of June 20, 2024. Fed. Bureau Prisons, *Find an Inmate*, (Jan. 30, 2024). https://www.bop.gov/inmateloc/.

On January 4, 2022, Dvorak began her incarceration. In February, her first risk and needs assessment determined that she was at a low risk for recidivism. Accordingly, for every thirty days of eligibility, she would receive ten days of FSA time credit (30:10 ratio).

Then, on July 31, 2022, Dvorak received a second risk and need assessment. The July

assessment determined that Dvorak was at a minimum risk for recidivism. As a result, her rate of FSA time credit per days of eligibility ratio changed. Under this new rate, for every thirty days of eligibility, Dvorak would receive fifteen days of FSA time credit (30:15 ratio). Dvorak has continued to maintain this ratio.

Initially, Dvorak earned 60 FSA time credits over 208 days of eligibility. Then, from July, 2022, to October, 2023, Dvorak earned 225 FSA time credits over 431 days of eligibility. Consequently, Dvorak earned 225 FSA time credits at the 30:15 rate and 60 FSA time credits at the 30:10 rate for a grand total of 285 FSA time credits. [1]

While Dvorak was eventually transitioned to home confinement, Dvorak completed a post-secondary course that the BOP categorized as an evidence-based recidivism reduction ("EBRR") program.

**§ 2241 Petition**

On August 29, 2023, Dvorak filed a § 2241 petition. Dvorak asserts that as part of her completion of the post-secondary education, she has earned FSA time credits. However, the BOP has refused to apply these time credits to her sentence.

Dvorak attempted to take her grievances through the administrative remedy process by filing a BP-9 form. Her complaint was under review when she chose to withdraw it. Despite this withdrawal, Dvorak proceeded higher up the administrative chain, filing BP-10 and BP-11 forms. At each stage she was rejected and instructed that the proper form had not been filed at the lower level. However, the instructions sometimes conflicted with one another. In one

---

[1] There appears to be a discrepancy in the calculations that ultimately is moot but the Court feels obliged to address. Depending on the method of calculation, Dvorak should have accrued approximately 69.3 FSA time credits at the initial rate of 10:30. However, Dvorak only earned 60 according to the Defendants' response. Yet, while Dvorak was at the improved rate, she should have only accrued 215.5 time credits over her 431 days of eligibility, though the Defendant indicates that she received 225 days of time credit during this time period. The sum of the Court's calculation (284.8) and the Defendant's sum (285) are near equal.

response, she was directed to file a BP-10, in others she was directed to file at a different level. (Doc. 1).

It was only upon Dvorak's final denial that she chose to submit the BP-9 form again. After she was denied, instead of proceeding through the appeal process she had earlier with the BP-9 denial, she filed this petition.

The Court found that the petition was not clearly frivolous and ordered the government to respond. In its response, the Respondent elaborated on the deficiencies of Dvorak's attempts at seeking an administrative remedy and explained the FSA credit calculation in detail.

According to the Respondents, the Petitioner's case stems from a fundamental misunderstanding of the effect of taking BOP-approved courses. Dvorak believes that she is entitled to FSA time credit for the hours of coursework completed for the course while the BOP asserts that she the approved courses only affect the FSA credit earning ratio and that Dvorak is already at the most advantageous earning ratio.

## II.     Applicable Law

**Exhaustion Requirement**

When an inmate believes the BOP is computing their sentence incorrectly, they may challenge their confinement by filing a § 2241 petition. *United States v. Walker*, 917 F.3d 989, 994 (7th Cir. 2019) (noting inmate may challenge the computation of his sentence by a § 2241 petition after first seeking relief through the BOP's administrative procedures); *United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992); *Carnine v. United States*, 974 F.2d 924, 927 (7th Cir. 1992); *United States v. Dawson*, 545 F. App'x 539, 541-42 (7th Cir. 2013)

However, a petitioner must exhaust his administrative remedies before filing a § 2241 petition.  This is a common-law exhaustion requirement, not a statutory one. *Richmond v.*

*Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). The Court may require it before it entertains a § 2241 petition. *Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986) (holding that "a federal prisoner challenging a disciplinary decision within the federal institution must exhaust his administrative remedies before seeking federal habeas relief"); *United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992) (same with respect to sentence computation). Because the exhaustion requirement was not imposed by Congress, the Court can excuse the requirement if, *inter alia*, requiring exhaustion would cause undue delay, or alternatively, if the requiring exhaustion would be futile because the agency has predetermined the issue. *See Davis v. Spoden*, 2009 U.S. Dist. LEXIS 7349 *4 (2009) (citing *Iddir v. INS*, 301 F.3d 492, 498 (2002)). The BOP's Administrative Remedy Program for an inmate's issue "relating to any aspect of his/her own confinement" is set forth in 28 C.F.R. § 542.10 *et seq.* To challenge a BOP sentence computation, the inmate should first try to resolve the issue informally with prison staff. 28 C.F.R. § 542.13.

If the issue cannot be resolved informally, an inmate must submit an Administrative Remedy Request (on a Form BP-9) to institutional staff designated to receive them in the institution in which she is housed. 28 C.F.R. § 542.14(a), (c)(4). The warden must respond with 20 days of when the administrative remedy is accepted and logged, subject to a 20-day extension. 28 C.F.R. § 542.18.

If the inmate is not satisfied with the warden's response to his Administrative Remedy Request, she may submit an appeal (on a Form BP-10) to the appropriate BOP Regional Director within 20 days of the date the warden signed the response. 28 C.F.R. § 542.15(a). The Regional Director must respond within 30 days, subject to a 30-day extension. 28 C.F.R. § 542.18.

If the inmate is not happy with the Regional Director's response, she may appeal further

to the BOP General Counsel (on a Form BP-11) within 30 days of the regional response, with some exceptions if there is a valid reason for delay.  28 C.F.R. § 542.15(a). The General Counsel must respond within 40 days, subject to a 20-day extension. 28 C.F.R. § 542.18. The appeal to the General Counsel is the final step in the Administrative Remedy Program. *Id.*  Inmate deadlines are subject to extension for valid reasons for delay. 28 C.F.R. §§ 542.14(b), 542.15(a). An inmate may not raise on appeal any issue not raised at lower levels. 28 C.F.R. § 542.15(b)(2).

**FSA Time Credits**

There are a variety of different time credits inmates can receive that ultimately reduce their length of incarceration. Under the First Step Act, inmates can receive time credit for participating in evidence-based recidivism reduction programs ("EBBR"). 18 U.S.C. § 3632(d)(4)(A)(i)-(ii); 28 C.F.R § 523.41(a), (c). How much FSA time credit an inmate receives for participating in these programs is governed by whether they are at a minimum, low, medium or high risk of recidivism; the lower the risk of recidivism, the higher the ratio of time credit earned per day of eligibility.

When an inmate reaches the minimum risk of recidivism, inmates earn FSA credit at a 30:15 ratio. However, when an inmate is *already* determined to be at a minimum risk to recidivate, taking further BOP-approved courses does *not* allow them to earn direct *FSA* credit for the work of those courses. There are other methods by which an inmate can earn time credit for educational programs, but not FSA credits. In other words, no inmate can earn more than fifteen FSA time credits over thirty days of eligibility.

### III. Analysis

**Dvorak has not Exhausted**

While Dvorak went through the proper administrative appeals chain, she did not go through with the initial step. While Dvorak filed a BP-9 she withdrew it before she was denied. As a result, her appeals up the administrative chain were premature.

As Dvorak was repeatedly informed, she was required to file a BP-9 before taking her claims higher up the administrative chain. It was only at the end of the process did Dvorak take the necessary step of filing a BP-9 and waiting for a denial before proceeding with the administrative appeals. While Dvorak did eventually listen, the idea of requiring administrative exhaustion is to give the BOP the opportunity to examine the merits of Dvorak's claims. The BOP did not have this opportunity.

A BP-9 decision is a necessary condition for appealing. Dvorak chose to withdraw her BP-9 from consideration before it could be decided on. Dvorak did not satisfy that necessary condition before going through the appeals process. Therefore, Dvorak did not exhaust her administrative remedies before filing.

**Exhaustion is Excused**

While Dvorak did not exhaust her administrative remedies, the Court has the discretion to excuse exhaustion if certain requirements are met, such as whether requiring exhaustion would cause undue delay or alternatively, whether requiring exhaustion would be futile because the outcome has been predetermined.

Dvorak attempted to resolve matters through the BOP's process for months before filing her § 2241. Though she is responsible for withdrawing her BP-9, she continued to appeal and was told at one point, due to the kind of facility she was in, she could file a BP-10 directly.

Dvorak's petition includes multiple scans of different appeals and correspondence indicating a clear attempt by Dvorak to seek administrative remedies. Denying her appeal on lack of exhaustion would cause another long delay. Given Dvorak is set to be released from custody soon, the length of the appeal process would likely extend up to her release.

Additionally, Dvorak's multiple and persistent attempts to resolve the matter within the administrative review process, the ultimate rejection of her properly filed BP-9, and the merits of her petition; all lead the Court to believe, were the Court to require Dvorak proceed through her administrative remedies first, the result would be predetermined, and Dvorak would simply refile.

Therefore, not excusing exhaustion here would be futile and cause undue delay. Accordingly, the Court excuses exhaustion here and shall proceed with examining the merit of Dvorak's claims.

**Dvorak's Claims Lack Merit**

While the Court excuses exhaustion here, Dvorak's claims do not have merit.

It is true that Dvorak has completed a BOP-approved post-secondary course as a part of an EBBR program, but, because Dvorak is *already* at minimum risk for recidivating, she cannot earn a high ratio of FSA Credit to total days of eligibility; nor can she earn direct FSA credit by doing approved coursework.

As the Respondent's response states, the Petitioner seems to believe that coursework time as part of a BOP-approved post-secondary course entitles her to FSA credit. She has already reached the maximum FSA credit per days of eligibility. While she may be entitled to other forms of time credit, the basis of her petition—that she was unjustly denied FSA time credit for participating—is meritless.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Dvorak's § 2241 petition and **DIRECTS** the Clerk of Court to enter judgment accordingly.

If the petitioner wishes to appeal this decision, generally she must file a notice of appeal with this Court within 60 days of the entry of judgment. Fed. R. App. P. 4(a)(1)(B). A motion under Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no more than 28 days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from judgment, do not toll the deadline for an appeal.

If the petitioner files a motion for leave to appeal *in forma pauperis*, she must include in his motion a description of the issues she intends to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If she appeals and is allowed to proceed *in forma pauperis*, she will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008). It is not necessary for the petitioner to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**
**DATED:  February 9, 2024**

                                                     *s/ J. Phil Gilbert*
                                                     **J. PHIL GILBERT**
                                                     **DISTRICT JUDGE**